UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THOMAS MATTHEW GAUTHIER,

           Petitioner,

   v.

JEFFREY UTTECHT,

           Respondent.

CASE NO. C18-492 RAJ-BAT

**REPORT AND RECOMMENDATION**

    Petitioner Thomas Matthew Gauthier seeks 28 U.S.C. § 2254 habeas relief from his King County Superior Court conviction and sentence for rape in the second degree. *State v. Gauthier*, 189 Wash. App. 30 (2015). Two grounds[1] for relief are before the Court:

    (1)    The trial court denied petitioner the right to present a defense.

    (2)    An out-of-court conversation between a juror and a witness violated petitioner's right to a fair trial. *See* Dkt. 4.

    Respondent does not argue these grounds for relief are unexhausted or untimely. The claims are thus properly before the Court, and the Court need not recite the procedural history regarding the state court direct appeal or personal restraint petition proceedings.

---

[1] The habeas petition raises three grounds for relief. By counsel, petitioner withdrew the third ground and agrees it should be dismissed. Dkt. 22 at 8.

REPORT AND RECOMMENDATION - 1

The Court recommends the habeas petition be denied because petitioner fails to show the state-court adjudication of his grounds for relief was contrary to, or an unreasonable application of, established federal law, or was an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1)–(2). The Court also recommends **DENYING** an evidentiary hearing and issuance of a certificate of appealability.

## BACKGROUND

The Washington Court of Appeals summarized the facts regarding petitioner's case as follows:

> Evidence at trial shows the following facts: In 2001, TA worked two jobs as a medical assistant and as a waitress at Rascal's Casino in South Seattle. TA did not own a car, so she walked the few blocks from her apartment to work at the casino.
>
> On April 22, 2001, at about 3:00 a.m., TA was walking home from the casino along Des Moines Memorial Drive. TA said she was suddenly pushed from behind over a guardrail by an unknown assailant. She tried to dissuade the attacker from raping her by telling him she was having her period, and removed her tampon to prove it. She testified that he forced her to remove her pants, grabbed her neck, and demanded she perform oral sex. He threatened to hurt her if she resisted. He ejaculated and fled as TA was "spitting all over the place." Report of Proceedings (RP) (Nov. 19, 2013) at 406–07.
>
> TA knocked on her neighbors' doors for help but no one answered. She got a knife from her apartment and went outside to look for her attacker, intending to kill him.
>
> TA received a call from her sister's boyfriend, Donald Brown, whom she knew from childhood. Crying, she asked Brown to come over. When he arrived, she told him she had been raped. Brown saw a scratch mark on TA's neck. They both drove around the area in Brown's car looking for the attacker. TA called 911 the next day.
>
> Police collected TA's clothing and examined the scene where the attack occurred. They noticed an area where the foliage was matted down. Detectives also found a tampon lying on the ground.

REPORT AND RECOMMENDATION - 2

Detectives observed grass stains on TA's right leg, upper right pocket, and back pocket, and dirt stains on her lower leg. They also saw bruising on her upper arms and hip.

TA worked with a sketch artist to create an image of her attacker. Relying on this sketch, police stopped Thomas Gauthier on June 28, 2001. Gauthier told the detectives about his recent release from jail and gave them his address. At the time, he had no further contact with police.

In August 2001, the crime lab tested a semen sample from the jacket TA wore on the night of the attack. Police were unable to match the sample to a known DNA (deoxyribonucleic acid) profile. TA met with detectives and identified one person in a photo montage, but the suspect's DNA did not match the profile from TA's jacket.

In 2008, the Combined DNA Index System (CODIS) returned a match between the DNA sample found on TA's jacket and Gauthier's DNA. Police located Gauthier in Arizona and returned him to Washington for trial on the second degree rape charge.

At trial, Gauthier admitted that in 2001 he was addicted to crack cocaine, struggled to keep a job or driver's license, and often sought sex from prostitutes. When he was contacted by detectives in 2008, Gauthier said he was surprised and amused that he was suspected of rape.

Gauthier initially denied recognizing TA's photograph. Later on, he claimed to remember more details about his interactions with TA. Gauthier testified that he first met TA in a grocery store parking lot where he was waiting to buy crack cocaine from a dealer. When his dealer failed to arrive, he asked TA if she could get him the drugs and she agreed. Gauthier said he gave TA $60, but she never returned with either the drugs or money.

Gauthier said the next time he saw TA was on Des Moines Memorial Drive between 2:30 or 3:00 a.m. He asked her whether she had crack, and she said she did not. She refused when he asked her if she would perform oral sex for $20. TA consented when Gauthier offered her $50. They both stepped over the guardrail and TA performed oral sex. Gauthier testified that he eventually recognized her from their prior encounter and decided not to pay her. Gauthier denied raping TA.

REPORT AND RECOMMENDATION - 3

> A jury convicted Gauthier of second degree rape and we reversed the conviction. *State v. Gauthier*, 174 Wash. App. 257, 298 P.3d 126 (2013). On retrial, he was convicted as charged. He appeals.

*State v. Gauthier*, 189 Wash. App. at 33-34.

## EVIDENTIARY HEARING

The court retains the discretion to conduct an evidentiary hearing. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170 (2011). A hearing is not required if the allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* The Court concludes petitioner's habeas claims may be resolved by review of the existing record and no evidentiary hearing is required because petitioner's allegations do not entitle him to habeas relief.

## HABEAS REVIEW STANDARD

A federal court may not grant habeas relief unless the state court decision: "(1) was contrary to clearly established federal law as determined by the Supreme Court, (2) involved an unreasonable application of such law, or (3) . . . was based on an unreasonable determination of the facts in light of the record before the state court." *See Fairbank v. Ayers*, 650 F.3d 1243, 1251 (9th Cir. 2011) (as amended); 28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is contrary to clearly established federal law if it contradicts the law set forth by the United States Supreme Court, or reaches a result different than that reached

REPORT AND RECOMMENDATION - 4

by the Supreme Court on materially indistinguishable facts. *See Terry Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A state court's decision is an unreasonable application of clearly established federal law when the state court identifies the correct legal rule, but applies it to a new set of facts in a way that is objectively unreasonable. *See id*. at 407. "Clearly established federal law means the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Xiong v. Felker*, 681 F.3d 1067, 1073 (9th Cir. 2012) (citation omitted). A court's determination of clearly-established law rests on a Supreme Court holding, not on circuit decisions. *See Wright v. VanPatten*, 552 U.S. 120, 125–26 (2008) (A Supreme Court case must have "squarely address[ed]" a certain issue and given a "clear answer" regarding the applicable legal rule to create "clearly established federal law.).

As to habeas relief based upon a claim the state court unreasonably determined the facts, "a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller–El I*, 537 U.S. 322, 340 (2010) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

Additionally state-court factual findings are presumed correct. This is a presumption the petitioner must overcome by clear and convincing evidence. *Davis v. Ayala*, 135 S. Ct. 2187, 2199–2200 (2015) (quotation and citation omitted). Consequently even if reasonable minds reviewing the record might disagree about a state court's factual determination, a federal habeas court cannot supersede the trial court's determination. " *Id.* at 2201.

In considering a habeas petition, a federal court reviews the "last reasoned decision" from the state court. Where the final state court decision contains no reasoning, the court looks to the last decision from the state court that provides a reasoned explanation of the issue. *See Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Where no state court decision articulates its underlying reasoning, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. . . ." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). When the state courts fail to provide reasoning for its decisions, a federal court must independently review the record and ascertain whether the state court's decision was objectively unreasonable." *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (citation and internal quotation marks omitted)." "Crucially, this is not a de novo review of the constitutional question. Rather, even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citations and internal quotation marks omitted).

Finally, a federal court's review of a habeas claim is limited to the facts before the state court and the petitioner is not entitled to an evidentiary hearing in federal court. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). "An evidentiary hearing may be appropriate after *Pinholster* only if the district court first determines that the state court made an unreasonable application of federal law or made an unreasonable determination of facts based on the record before it." *Grecu v. Evans*, No. 07-0780-EMC, 2014 WL 5395783, at *17 (N.D. Cal. Oct. 22, 2014) (unreported).

## DISCUSSION

**Claim 1         Petitioner Was Denied the Right to Present a Defense**

A federal habeas court reviews claims a petitioner fully and fairly presented in the state courts. In the state personal restraint petitioner (PRP) that petitioner filed, he claimed "the trial

court improperly applied the rape shield law, violating the petitioner's Sixth Amendment right to present a defense." Dkt. 15, Exhibit 26 at 93. The state court of appeals articulated petitioner's claim as an assertion that the trial court "'improperly applied the rape shield law' and violated his right to present a defense by prohibiting him from inquiring as to whether T.A. was working as a prostitute." *Id.,* Exhibit 29 at 6. (Order Dismissing PRP). The state court of appeals rejected this claim on the following grounds:

> Under RCW 9A.44.020, the so called "rape shield law," evidence of a victim's past sexual behavior is inadmissible on the issue of credibility. RCW 9A.44.020(2). At the same time, where the charge is rape, evidence of a victim's past sexual behavior is still not admissible on the issue of the victim's credibility, but it may be admissible on the issue of consent. RCW 9A.44.020(3). To admit such evidence, a defendant must file a written pretrial motion "stating that the defense has an offer of proof of the relevancy of evidence of the past sexual behavior of the victim proposed to be presented and its relevancy on the issue of the consent of the victim." RCW 9A.44.020(3)(a). The motion "shall be accompanied by an affidavit or affidavits in which the offer of proof shall be stated." RCW 9A.44.020(3)(b). If the trial court finds the offer of proof sufficient, the court must hold a hearing to determine whether the "past sexual behavior of the victim is relevant to the issue of the victim's consent; is not inadmissible because its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice; and that its exclusion would result in denial of substantial justice to the defendant." RCW 9A.44.020(3)(c) & (d).
>
> Here, however, Gauthier presented no information that T.A. had ever worked as a prostitute. And defense counsel admitted they had no such evidence and did not intend to assert T.A. was a prostitute. Thus, Gauthier was not denied his right to present a defense because he had no evidence supporting the defense. In addition, Gauthier was fully permitted to tell his version of the events on the night in question, including his claim that he offered money to T.A. for sex. He was also allowed to ask T.A. whether she was offered money for sex. Gauthier fails to establish error.

Dkt. 17, Exhibit. 29 (order dismissing petition) at 6-7.

The Washington Supreme Court agreed with the state court of appeals finding:

REPORT AND RECOMMENDATION - 7

> [T]here was no evidence of the victim's past sexual behavior aside from Mr. Gauthier's trial testimony, and the court allowed Mr. Gauthier to testify that he believed the victim was a prostitute. Mr. Gauthier provided the trial court with no additional evidence of past sexual behavior. The trial court cannot have erred in refusing to admit evidence that was not presented. In sum, this claim lacks any basis in law or fact.

*Id.* Exhibit 33, at 2.

States have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). In this action, petitioner does not argue Washington's rape shield law is unconstitutional, or that the state court misapplied Washington's rape shield law, in limiting cross-examination.[2] Rather, he argues he was denied a meaningful opportunity to present a complete defense on the grounds the trial judge limited his cross examination of TA to one question: Did petitioner offer TA money in exchange for sex. Dkt. 22 at 2.

The claim fails. A criminal defendant has the right to a meaningful opportunity to present a defense. *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). Petitioner argues:

> T.A having worked as a prostitute and the high-prostitution nature of the area in which the alleged assault took place were not areas of inquiry that would have been made to cast aspersions on T.A. or to district the jury with a tangential issue. Rather, whether T.A. worked as a prostitute was critical to Mr. Gauthier's defense.

Dkt. 22 at 3. Here, the state court found petitioner did not present any evidence that TA had ever worked as a prostitute. The right to present a defense is only implicated when the evidence the defendant seeks to admit is "relevant and material, and . . . vital to the defense." *Washington v.*

---

[2] To the extent petitioner claims the state court misapplied the state rape shield law, he is not entitled to habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (explaining "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

REPORT AND RECOMMENDATION - 8

1   *Texas*, 388 U.S. 14, 16 (1967). Petitioner presented no evidence at trial that TA had ever worked
2   as a prostitute and a due process violation occurs only where the excluded evidence has
3   "persuasive assurances of trustworthiness" and was "critical" to the defense. *Chambers v.*
4   *Mississippi*, 410 U.S. at 302. The state court found there was no evidence of the victim's past
5   sexual behavior aside from Mr. Gauthier's trial testimony, a factual finding petitioner has not
6   contested or rebutted. The burden to disprove the factual findings made by the state court rests
7   with petitioner and he has failed to meet this burden. *See* 28 U.S.C. § 2254(e)(1) (requiring
8   "clear and convincing evidence" to rebut "a determination of a factual issue made by a State
9   court").

10  In his response, petitioner claims TA worked as a prostitute but the claim is made without
11  supporting evidence. A self-serving claim, in any event, is insufficient evidence to support
12  federal habeas relief. *See Turner v. Calderon*, 281 F3d 851,881 (9th Cir. 2002) (Tuner's self-
13  serving statement made years after trial that he was told the case was not a death penalty case is
14  insufficient to show Turner was unaware of a potential death verdict).

15  As petitioner presented no evidence at trial that TA ever worked as a prostitute or that she
16  was working as a prostitute on the night in question, the Washington Supreme Court's finding
17  that the trial court cannot have erred in refusing to admit evidence that was not presented is thus
18  neither contrary to Supreme Court law or factually objectively unreasonable. There was no
19  evidence establishing TA was a prostitute and thus no evidence of prostitution to admit. The state
20  trial court thus did not impermissibly exclude reliable evidence of probative value to help prove
21  a defense.

22  Additionally, the record does not support petitioner's claim he was denied the ability to
23  "elicit testimony that would bolster his defense that their sexual contact was consensual and

REPORT AND RECOMMENDATION - 9

1 occurred in the context of prostitution." Dkt. 22 at. 1. Petitioner testified he offered money to TA
2 in exchange for sex on the night in question. Petitioner was also allowed to ask TA whether
3 petitioner offered her money for sex. TA denied petitioner offered money for sex. Dkt. 15,
4 Exhibit 6, at 455. Petitioner does not indicate what other cross-examination questions he would
5 have asked and has not shown how or why additional questions would make a meaningful
6 difference to outcome of the case.

7 A violation of the right to present a defense merits habeas relief only if the error had a
8 substantial and injurious effect on the verdict. *See Lunbery v. Hornbeak*, 605 F.3d 754, 762 (9th
9 Cir. 2010) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). Petitioner was not
10 denied the right to present a defense. He testified he offered TA money for sex and that the
11 sexual contact was consensual. Petitioner was also not denied the right to present evidence in
12 support of the consent defense because he presented no evidence that TA was a prostitute, and
13 thus material evidence relevant to his defense was not improperly excluded, as the state court
14 correctly found. And finally, petitioner does not indicate what additional cross-examination
15 questions he would have asked, and shown how they would have made a meaningful difference
16 to his defense and the outcome of the case. He thus fails to establish the state court actions had a
17 substantial and injuries effect on the verdict.

18 In sum, the state courts' factual findings were reasonable and the state courts'
19 determination is neither contrary to nor an unreasonable application of Supreme Court law. The
20 Court should accordingly dismiss the claim.

21 **Claim 2       The Out-Of-Court Conversation Between a Juror and a Witness Violated Petitioner's Right to a Fair Trial**.

22
23 The record indicates Juror 59 briefly spoke to state witness Deputy Lysen during a break.
Dkt. 15, Exhibit 4 at 208. After being advised of the contact, the trial judge conducted a hearing.

REPORT AND RECOMMENDATION - 10

*Id.* Deputy Lysen told the judge a juror asked "how do you remember so much," and he responded he could not talk with her. *Id.* The juror told the trial judge she asked the deputy if he knew before coming to court if he was testifying. The juror stated the deputy said "it's a long time ago," and that she remarked to him she was "surprised that he could remember anything." *Id.* 214-16. The juror told the trial judge she could still be fair and impartial, had not formed opinions about the case, or the deputy, but felt the deputy had a difficult job because he had to rely on notes from many years in the past. *Id*. at 217. The juror also stated she did not tell the other jurors about her contact with the deputy. *Id.* at 218.

On direct review, petitioner claimed the "trial judge abuse[ed his] discretion [by] allowing juror/witness interaction outside the courtroom." Dkt. 15, Exhibit 10 at 17 (Statement of Additional Grounds for Review). The state court of appeals rejected the claim making the following findings:

> Gauthier argues the trial court abused its discretion when it denied defense counsel's motion for a mistrial, or in the alternative, excusal of juror 59 for cause. Counsel's motion was based on a deputy sheriff's report that one of the jurors spoke to him during a lunch break, telling him "I can't believe how much you remember." RP (Nov. 18, 2012) at 208. The trial court interviewed juror 59, who stated that she had not formed any opinions about the case and could remain fair and impartial. Because the trial court is best situated to determine a juror's ability to serve impartially, we review the court's denial of a for-cause juror challenge for abuse of discretion. (citation omitted). We cannot say on this record that the trial court abused its discretion ion concluding that juror 59 could remain impartial.

Dkt. 15, Exhibit 13 at 13-14. The Washington Supreme Court also rejected the claim on the grounds "[t]he Court of Appeals fully adjudicated this issue on direct appeal, holding that the trial court did not abuse its discretion in denying Mr. Gauthier's motion for a mistrial or to

REPORT AND RECOMMENDATION - 11

excuse the juror (citation omitted). Mr. Gauthier shows no good cause or reason in the interests of justice to revisit that holding." *Id*., Exhibit 33 at 2.

Petitioner argues the state courts' determinations are contrary to clearly established Supreme Court law arguing the "trial court recognized the juror committed misconduct, but did not require the state to establish that the error was harmless. Instead the trial court found the juror's comment was ambiguous and failed to presume prejudice as required by Supreme Court precedent." Dkt. 22 at 7. Petitioner argues unless the prosecution shows there is no reasonable possibility that the communication will influence the verdict, the Court must grant relief. *Id.*

The record shows that after questioning the juror and deputy, the trial judge heard argument from the parties. The prosecuting attorney argued "the important question is whether or not prejudice has resulted." Dkt. 15, Exhibit 4, at 225. The prosecutor argued the juror did not tell the other jurors about the contact and that she indicated "information from the deputy hasn't changes her opinion about the case, that she believes she could be a fair and impartial juror. So I don't think that prejudice has been established." *Id.* Defense counsel disagreed arguing the juror "formulated some opinion about him, which is extrinsic evidence, denying Mr. Gauthier a right to a fair trial." *Id at 229.*

The trial judge found:

> there isn't any significant misconduct that prejudices Mr. Gauthier's rights to a fair trial in any way. Yes, there is minor misconduct in that the juror spoke to Deputy Lysen and shouldn't have done so, but there is no indication that that indicates that she formed an opinion what way or the other. The comment that she made could cut both ways. It's not clear to me whether what she said was saying was either supportive of his testimony or skeptical of his testimony supported the state's position, skeptical of the state's position or anything else. So I just can't find that there is anything here that rises to the level that requires dismiss of the juror or mistrial.

REPORT AND RECOMMENDATION - 12

*Id*. at 232.

The Sixth Amendment inquiry regarding outside influence on a jury is fact-specific. The core principle is evidence against a defendant must come from the witness stand. In *Mattox v. United States*, the bailiff told the jurors during deliberations the defendant had killed someone else, and brought a negative newspaper article to the jurors to read. In this context, the Supreme Court stated "[p]rivate communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." *Mattox v. United States*, 146 U.S. 140, 150 (1892). The *Mattox* inquiry thus asks whether the improper juror contact was "possibly prejudicial," i.e. that it had a "tendency" to be injurious to the defendant. *Id* at 150. If so, then the contact is "deemed presumptively prejudicial" and the burden falls on the prosecution to establish harmlessness. *Remmer v. United States*, 347 U.S. 227, 229 (1954).

The Supreme Court has applied the *Mattox* rule under circumstances in which the contact with a juror is egregious. *Mattox* involved a bailiff telling jurors the defendant had killed before. In *Remmer*, a juror received a bribe. *In Turner v. Louisiana*, 379 U.S. 466, 473-74 (1965), jurors had continuous and intimate contact with two key government witnesses throughout a three day trial, "not a brief encounter." And in *Parker v. Gladden*, 385 U.S. 363, 363-64, (1966), the Court held defendant's Sixth Amendment rights were violated when the bailiff told a juror the defendant was a "wicked fellow" and that if the defendant was wrongly convicted, the Supreme Court would fix it.

By these standards, the state court determinations cannot be deemed contrary to or an unreasonable application of clearly established Supreme Court law. This is not a case in which the state court disregarded the issue of whether the juror's contact with the deputy prejudiced

REPORT AND RECOMMENDATION - 13

petitioner. Rather, the trial judge took testimony indicating the juror and deputy had a brief one time encounter, in which the juror indicated she was surprised about how the deputy could remember the case. The deputy did not discuss the facts of the case with the juror and the juror did not tell the other jurors about her contact with the deputy. The juror told the trial judge she had not formed any opinions about the case and could be fair and impartial. The trial judge then heard from the parties. The prosecuting attorney argued to the trial judge the contact did not prejudice petitioner's right to a fair trial, and the trial judge determined the juror could be fair and open minded and that the contact between the witness and the juror did not jeopardize petitioner's right to a fair trial. The trial judge was persuaded and the state court of appeals and Washington Supreme Court found the trial judge's determination was not an abuse of discretion.

This is thus not a case in which the prosecution made no showing that the contact was not prejudicial. To be sure, petitioner disagrees the prosecution failed to show the contact was not prejudicial, but the record shows the juror and deputy provided testimony, the prosecutor argued petitioner was not prejudiced, and the trial court made a ruling finding no prejudice. Based upon the facts of record, the court cannot say it was unreasonable for the trial judge to conclude petitioner was not prejudiced by the contact between the juror and witness, or for the state court of appeals and Washington Supreme Court to affirm that conclusion.

Petitioner also argues because the contact "raises a risk" of influencing the verdict, prejudice must be presumed and habeas relief must be granted. But this argument is one that could be made in every case in which there is contact with a juror, does not reflect Supreme Court law and thus cannot be a basis for habeas relief. In terms of whether the contact was possibly prejudicial, as the term is used in *Maddox* and *Remmer*, the Court cannot second guess the state court's determination. The trial judge found the contact did not prejudice petitioner and

REPORT AND RECOMMENDATION - 14

as noted above, state-court factual findings are presumed correct. This is a presumption the petitioner must overcome by clear and convincing evidence. Here, petitioner makes an argument of prejudice but presents no evidence in support, other than disagreeing with the trial court's determination.[3] Even if reasonable minds reviewing the record might disagree about a state court's factual determination, a federal habeas court cannot supersede the trial court's determination.

Additionally, as noted above, federal habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Davis v. Ayala*, 135 S.Ct. at 2198. Here, petitioner fails to show the contact between the juror and the deputy had an actual and injurious effect on the jury's verdict. Habeas relief should accordingly be denied.

**CERTIFICATE OF APPEALABILITY**

If the district court adopts the Report and Recommendation, it must determine whether a certificate of appealability ("COA") should issue. Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of

---

[3] The trial testimony Deputy Lysen gave also cuts against petitioner's claim of possible prejudice. The deputy testified he responds to 911 calls (Dkt. 15, Exhibit 3 at 432); that he responded to a 911 call from TA (434) and went to her apartment (436); that TA was crying and upset; that he could not recall if he took a written statement or not (439); that Deputy Shaw was called to assist and take photographs (441); that he gave the photos to the case detectives (442); that he collected physical items as evidence from TA's apartment (443); that he went with TA to the spot she said she was assaulted (444); and that he retrieved a tampon she said she pulled out when assaulted (445). Petitioner presents nothing showing Deputy Lysen's testimony was not credible, that the acts he testified he performed were impermissible or violated his constitutional rights, or that the contact he had with the juror in the hallway played any role in the jury's assessment of the Deputy's testimony or the outcome of the trial.

REPORT AND RECOMMENDATION - 15

reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The Court recommends petitioner not be issued a COA. No jurist of reason could disagree with this Court's evaluation of his habeas claims or would conclude that the issues presented deserve encouragement to proceed further. Petitioner should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

## OBJECTIONS AND APPEAL

Any objection to this Report must be filed and served upon all parties no later than **October 9, 2018.** The Clerk should note the matter for **October 12, 2018**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed eight pages. The failure to timely object may affect the right to appeal.

DATED this 25th day of September, 2018.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 16